Angel URTI, Plaintiff-Appellant,

v.

TRANSPORT COMMERCIAL CORPO-
RATION, Defendant-Appellee.

No. 72-2747.

United States Court of Appeals,
Fifth Circuit.

June 13, 1973.

Rehearing Denied Aug. 22, 1973.

Charles J. Ferrara, New Orleans, La., Sol Gothard, Metairie, La., for plaintiff-appellant.

G. Edward Merritt, Benjamin W. Yancey, New Orleans, La., for defendant-appellee.

Before JOHN R. BROWN, Chief Judge, and WISDOM and AINSWORTH, Circuit Judges.

WISDOM, Circuit Judge:

This case presents a challenge to the denial of a new trial. Angel Urti, plaintiff-appellant, was injured in the performance of his duties as a seaman aboard the S.S. Tamara Guilden. He filed suit against the owner of the vessel, Transport Commercial Corporation, for recovery under the general maritime law and under the Jones Act. The jury found that the shipowner was negligent, but that the ship was seaworthy. The jury further found that the plaintiff was contributorily negligent to the extent of fifty per cent of his damages. His motion for a new trial was denied. On appeal, Urti contends that there was no evidentiary basis for the jury's finding of contributory negligence and that the trial judge erred in not granting a new trial. The shipowner contends that, because Urti did not move for a directed verdict or for a judgment notwithstanding the verdict, he is precluded from challenging the legal sufficiency of the evidence for the jury's verdict. We hold

that there is no evidence in the record tending to show contributory negligence and that the district court erred as a matter of law in denying a new trial. Accordingly, we reverse and remand for a new trial.

## I.

On November 15, 1966, while aboard the S.S. Tamara Guildén in the port of Haifa, Israel, Angel Urti, the plaintiff, was ordered to paint draft numbers on the stern of the vessel. He was lowered over the side of the vessel in a pontoon. The bosun, operating the winch, lowered the pontoon at Urti's signal. To bring himself closer to the vessel, Urti used a two-inch breasting line which was attached to both the pontoon and to a pad-eye, a U-bolt, attached to the side of the vessel. The pontoon was supported by four one-inch wire lines attached to a bridle or ring which was in turn attached to the winch. The bosun told the plaintiff that he would slacken the wire lines, thus shifting more weight to the breasting line and causing it to become taut. This would naturally pull Urti closer to the ship. As the pontoon was being lowered in this fashion, the manila breasting line broke causing a shift in the position of the pontoon. The plaintiff fell forward striking his forearm and shoulder against the metal bridle or one of the wire cables.

The plaintiff alleged unseaworthiness on the basis of a defective rope. He also argued that the shipowner was negligent in assigning him an unsafe place to work, in providing him with unsafe equipment, and in assigning an insufficient number of men to perform this particular task. Both the plaintiff and the bosun testified that at least two more men were ordinarily required for this particular job.

When the motion for a new trial was argued the trial judge noted that there had been no challenge to the jury instruction on contributory negligence. He pointed out that "the subject might have better been taken up at that time, but once it goes to the jury, of course, I am extremely reluctant to say now that the jury was wrong on this thing." Although he denied the motion, the trial judge stated: "I think this is a case where I completely disagree with the jury's verdict but I will let the Fifth Circuit decide on the jury's verdict."

## II.

■ At the outset, the appellee argues that this Court is precluded from a review of the "legal sufficiency of the evidence" because the plaintiff did not move for a directed verdict or for judgment notwithstanding the verdict. The plaintiff's failure to make these motions does not bar him from appealing on the ground that as a matter of law the trial court erred in not granting a new trial.

■ The function of the directed verdict and the judgment n. o. v. is to order a final verdict for the moving party, whereas the function of the new trial is to order a redetermination of the issues before a new jury. The motions for directed verdict and judgment n. o. v. require a district judge to decide whether, as a matter of law, the evidence, when considered in the light most favorable to the non-moving party, is legally sufficient to submit the case to the jury, or whether it is legally sufficient to support the jury's verdict. See Glazer v. Glazer, 5 Cir. 1967, 374 F.2d 390, 400; 6A Moore's Federal Practice ¶ 59.-04[5], p. 3715 (1972). C. Wright and A. Miller, 9 Federal Practice and Procedure, ¶ 2531–32 (1971). See discussion, Marsh v. Illinois, 5 Cir. 1949, 175 F.2d 498. Those motions are similar in effect to a motion for summary judgment in that they challenge the existence of a genuine issue of fact and that they seek a final judgment. 6A Moore's Federal Practice, *supra* at 3715. See discussion, Cities Service Oil Co. v. Launey, 5 Cir. 1968, 403 F.2d 537. In contrast, the motion for a new trial invokes the sound judicial discretion of the district judge. "Although the evidence was legally sufficient to take the case to the jury so that a directed verdict was not justified,

[still, a new trial may be proper where] the verdict is against the weight of the evidence." 6A Moore's Federal Practice ¶ 59.04[5], pp. 3715–16, ¶ 59.08[5].

■■ Barring plain error, an appellate court may not grant a directed verdict or a judgment n. o. v. absent an appropriate motion in the district court. Johnson v. New York N.H. & H.R. Co., 1952, 344 U.S. 48, 50; 73 S.Ct. 125, 97 L.Ed. 77. That is to say, the appellate court may not review the "sufficiency of the evidence" and grant a final judgment in favor of a party who failed to so move. Hommel v. Jackson-Atlantic Lines, Inc., 5 Cir. 1971, 438 F.2d 307. "Sufficiency" here is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. An explication of the standards for determining sufficiency is set out in Boeing v. Shipman, 5 Cir. 1969, 411 F.2d 365. It is possible that "reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions," Boeing, 411 F.2d 374, while at the same time the verdict would be "against the great weight of the evidence." There are circumstances where a district judge might rationally deny the motions for directed verdict and judgment n. o. v., but grant the motion for a new trial. Planters v. Protection Mut. Ins. Co., 5 Cir. 1967, 380 F.2d 869, 881.

■ We have previously held that motions for directed verdict and judgment n. o. v. are not prerequisites to a motion for a new trial. United States v. Bucon Const. Co., 5 Cir. 1970, 430 F.2d 420; Citizens Nat'l Bank of Lubbock v. Speer, 5 Cir. 1955, 220 F.2d 889.

■ On appeal, when we review the denial of a motion for a new trial, we are not reviewing "sufficiency" in its technical sense; that is, we are not reviewing the question of whether it was erroneous to submit the case to the jury. Rather, we are reviewing whether the district judge has abused his judicial

■ discretion in denying a new trial or whether as a matter of law the denial of a new trial was erroneous because there was an "absolute absence of evidence to support the jury's verdict." Indamer Corp. v. Crandon, 5 Cir. 1954, 217 F.2d 391, 393. Thus the appellee's argument that we may not here review the sufficiency of the evidence is correct but inapposite to this case.

■ Moreover, it would be poor judicial husbandry to require counsel ritualistically to move for a directed verdict and judgment n. o. v., regardless of his lack of conviction in their merit, to preserve his right to appeal the denial of a new trial. To demand a litany of introductory motions is not only illogical but harks back to the age of writs and technical pleading. We conclude that when a new trial is denied we should, by applying the proper appellate standard, review the decision of the district court. See Pruett v. Marshall, 5 Cir. 1960, 283 F.2d 436; Powell v. McIntire, 5 Cir. 1969, 415 F.2d 333.

### III.

■ There has been no cross appeal challenging the jury's conclusion that the shipowner was negligent. The only issue before us is whether the trial court erroneously denied a new trial because the lack of evidence of contributory negligence compels a new trial.

The court is ordinarily reluctant to review the denial of a new trial on the ground that the verdict was against the great weight of the evidence. But "the absolute absence of evidence to support the jury's verdict makes [refusal to grant a new trial] an error in law . . ." Indamer Corp. v. Crandon, 5 Cir. 1954, 217 F.2d 391, 393; see Boothe v. Holmes, 5 Cir. 1968, 399 F.2d 495. This is such a case.

It was the defendant's burden to prove contributory negligence but no witnesses or evidence were introduced on this issue. The only witness other than the plaintiff was the bosun, who testified that he provided the plaintiff

with the equipment used in their work and that it was the equipment ordinarily used for this operation. The bosun had no complaints about the plaintiff's work as a seaman and vouched that the plaintiff was "a worker." Neither witness noticed any visible defects in the manila line.

The bridle and four wire lines attached to the pontoon were permanently affixed before the day of the accident by someone other than the plaintiff. On the day of the accident the bosun attached the winch to the bridle. The plaintiff neither selected, nor provided, nor rigged any of the equipment used.

Because of the absolute absence of direct evidence of contributory negligence, the defendant argues that the jury might have inferred that the plaintiff gave improper signals to the bosun, causing excessive strain on the breasting line. Such a conclusion by the jury would have been mere conjecture and speculation, and not inference because there is not a scintilla of evidence in the record tending to show negligence in giving signals to the bosun.

 We have carefully reviewed the record and scrutinized the testimony of the two fact witnesses, the plaintiff and the bosun. There is no support in the record for the defendant's theory that the plaintiff was contributorily negligent. No question was asked, nor was any answer given which even indirectly suggested error in signaling. Indeed, the very structure of the defense counsel's statement of this issue in his summation admits its speculative nature.[1] In these circumstances we conclude that there was no evidence which would have legally entitled the jury to conclude that the plaintiff's negligence

contributed to his own injury. We hold that as a matter of law the trial judge should have granted Angel Urti a new trial.

Reversed and remanded.

---

[1]. The defense counsel stated: "It was Mr. Urti who told the bosun how far to let that pontoon down, and it was Mr. Urti called upon [sic] to make sure that not too much weight was put on the pontoon, so the line would not break. It was Mr. Urti's job, as we said, and the point is that we don't really know at this state,

after hearing this evidence, whether or not—maybe Mr. Urti failed to do his job." The plaintiff's counsel responded: "Had there been the other men on this job, Mr. Urti would not have had the necessity to give a signal. That would have been the other man's job."